# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Davis, Jr., :
     Petitioner :
            : No. 325 M.D. 2025
     v. :
            : Submitted: June 16, 2026
Pennsylvania Department of :
Corrections, :
     Respondent :


BEFORE: HONORABLE LORI A. DUMAS, Judge
      HONORABLE STELLA M. TSAI, Judge
      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**JUDGE DUMAS**             **FILED: August 4, 2026**


Robert Davis, Jr. (Petitioner) has filed a petition for review in this Court's original jurisdiction, asserting violations of his right to due process that have delayed his eligibility for parole. In response, the Pennsylvania Department of Corrections (Department) has filed preliminary objections in the nature of a demurrer, but the Department also cites *Feliciano v. Department of Corrections*, 250 A.3d 1269 (Pa. Cmwlth. 2021) (*en banc*), *affirmed*, 283 A.3d 196 (Pa. 2022), in support of its assertion that this Court lacks original jurisdiction over Petitioner's due process claims. Upon review, Petitioner has not pleaded the deprivation of a cognizable liberty interest because parole is not a right, but a manner of grace. *Commonwealth v. Brittingham*, 275 A.3d 83, 85 (Pa. 1971). Accordingly, we dismiss the petition for lack of jurisdiction. Further, we dismiss the Department's preliminary objections as moot.

# I. BACKGROUND[1]

Petitioner is a state inmate currently housed at State Correctional Institution Coal Township (SCI-Coal Township). He has served his minimum sentence and, therefore, may be considered for parole.

In April 2025, Petitioner was selected randomly for drug testing. According to Petitioner, officials did not follow proper procedures in collecting a sample of his urine, for example, by placing an unsealed collection cup in an area accessible by other inmates. Additionally, the testing lab was not provided with an updated list of Petitioner's prescription medications.

In May 2025, the Department issued a misconduct report alleging that Petitioner's urine had tested positive for a synthetic cannabinoid. Petitioner timely requested but was not permitted to call witnesses on his behalf in challenging this misconduct. He thereafter exhausted his administrative remedies. Ultimately, the Department did not credit Petitioner's testimony, upheld the misconduct, imposed 20 days in disciplinary custody, and removed him from mandatory sex offender treatment.[2]

In August 2025, dissatisfied with the outcome of his administrative appeals, Petitioner commenced this litigation.[3] Petitioner has pleaded that, by

---

[1] We base the statement of facts on those alleged in the petition for review. *See* Pet. for Rev., 8/22/25.

[2] The parties dispute the relevance of Petitioner's failure to complete his offender treatment over the course of his 20 years in jail. *Compare* Dep't's Br., 12/15/25, at 9 ("[T]he argument that [Petitioner] should somehow *benefit* because he has not yet completed the programming is misleading and unconvincing.") (emphasis in original), *with* Pet'r's Mem. of Law, 10/31/25, at 5 (rejecting the Department's argument because "Petitioner was not continuously eligible to participate in the mandated programming throughout his incarceration" and only became eligible "in recent years"). The dispute is irrelevant to our analysis.

[3] Petitioner has voiced frustration with the Department's failure to consider his 20-year history of clean urine tests, his chain-of-custody concerns, the unexplained denial of his request to call witnesses, and the denial of his request for supplemental drug testing. *See* Pet. for Rev., ¶ 28.

removing him from required treatment, the Department has "automatically delayed the earliest date on which he could again be considered for parole." Pet. for Rev., ¶ 20. Additionally, a failed urinalysis will shift him into a higher risk category and materially reduce his parole prospects. *Id.*, ¶ 21. Thus, according to Petitioner, his "loss of parole eligibility constitutes a deprivation of liberty without due process of law." *Id.*, ¶ 37. Petitioner further asserts the violation of a Department regulation that affords an inmate facing disciplinary action the "[o]pportunity . . . to tell his story and to present relevant evidence." *Id.*, ¶ 40 (quoting 37 Pa. Code § 3910(b)(3)). He asks this Court to vacate his misconduct and direct the Department to hold a new hearing consistent with due process. *See id.*, ¶ 47(a)-(g).

## II. DISCUSSION[4]

Presently before the Court, the Department has filed preliminary objections by demurrer. Prelim. Objs., 10/7/25; *see* Dep't's Br. at 4. According to the Department, neither Petitioner's 20 days in disciplinary custody nor his removal from mandatory sex offender treatment constitute atypical and significant hardships that would trigger due process protection. *See* Dep't's Br. at 8-10 (briefly discussing this Court's *en banc* decision in *Feliciano* and the United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

The Department reasons that if the sanction of 30 days in disciplinary custody, imposed for a failed drug test, was insufficient to trigger due process

---

[4] When reviewing preliminary objections, we "must treat as true all well-pleaded, material and relevant facts together with any reasonable inference[s] that can be drawn from those facts." *Cnty. of Berks v. Pa. Off. of Open Recs.*, 204 A.3d 534, 539 n.7 (Pa. Cmwlth. 2019) (citations omitted). We are not required to accept as true "conclusions of law, unwarranted inferences from facts, expressions of opinion or argumentative allegations." *Id.* "[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006).

3

protections in *Feliciano*, then the 20 days ultimately imposed on Petitioner cannot. *Id.* at 9. The Department simply rejects Petitioner's suggestion that his removal from sex offender programming is actionable; according to the Department, his removal was merely a collateral consequence of the sanction imposed and irrelevant to our due process inquiry. *Id.* Thus, the Department concludes, this "Court lacks original jurisdiction and the case should be dismissed." *Id.*

In response, Petitioner concedes that there is no right to judicial review of grievances arising from "the day-to-day operations of correctional institutions." Pet'r's Mem. of Law, 10/31/25, at 3 (unpaginated). Nevertheless, according to Petitioner, this Court may exercise jurisdiction over claims in which "an inmate asserts a violation of constitutional or statutory rights. *Id.* (citing *Bronson v. Cent. Off. Rev. Comm.*, 721 A.2d 357 (Pa. 1998)). Petitioner stresses that the focus of our inquiry must be on the nature of the alleged deprivation. *Id.* at 4 (citing *Gentilquore v. Pa. Dep't of Corr.*, 326 A.3d 512 (Pa. Cmwlth. 2024) (*en banc*)).

Here, Petitioner does not suggest that the direct consequences of his misconduct, *i.e.*, his 20 days in disciplinary custody and removal from sex offender treatment, constitute atypical punishment in a prison setting. *See generally id.*; Pet'r's Br., 1/14/26. Rather, Petitioner asserts that the Department's flawed disciplinary proceedings against him "altered the duration of his confinement by stripping him of access to required programming and delaying his eligibility for parole." Pet'r's Br. at 8. He maintains that this loss of parole eligibility is a direct and foreseeable deprivation of his liberty interest. Pet'r's Mem. of Law at 4-5; Pet'r's Br. at 9-11. Thus, Petitioner concludes, he is entitled to judicial review of his due process claims. *See* Pet'r's Mem. of Law at 5 (concluding that the

4

deprivation of this liberty interest "is sufficient to survive preliminary objections"); Pet'r's Br. at 10-11 (same).

Broadly, the premise of Petitioner's argument is sound, yet his subsequent reasoning and conclusion are clearly errant. Conversely, while the Department has not framed our analysis consistently, in that it has filed preliminary objections in the nature of a demurrer yet asserts our lack of jurisdiction,[5] its reliance upon *Feliciano* and *Sandin* is appropriate, and its conclusion that this Court lacks jurisdiction to consider Petitioner's claims conforms with prevailing precedent in Pennsylvania.

"Prison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens." *Gentilquore*, 326 A.3d at 516 (quoting *Feliciano*, 250 A.3d at 1274). While they do not shed their constitutional rights, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (quoting *Sandin*, 515 U.S. at 485).

Relevant here, a prisoner's right of access to judicial review is limited. *Id.* (citing *Bronson*, 721 A.2d at 358-59). There is but a narrow category of prisoner due process claims that fall within our original jurisdiction.[6] To evaluate

---

[5] These are distinct preliminary objections. *Compare* Pa.R.Civ.P. 1028(a)(1) ("lack of jurisdiction over the subject matter of the action"), *with id.* (a)(4) ("legal insufficiency of a pleading (demurrer)").

[6] The original jurisdiction of this Court is wholly statutory and narrowly circumscribed. *See* 42 Pa.C.S. § 761. "The conferral of original and exclusive jurisdiction creates subject-matter jurisdiction in the Commonwealth Court for the specified classes of claims." *Scott v. Pa. Bd. of Prob. & Parole*, 284 A.3d 178, 186 (Pa. 2022). "[S]ubject matter delineations must be policed by the courts on their own initiative even at the highest level." *Id.* at 188 (cleaned up). We may consider whether a litigant has invoked this Court's jurisdiction *sua sponte*. *Blount v. Phila. Parking Auth.*, 965 A.2d 226, 229 (Pa. 2009); *see also Ferguson v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 310 M.D. 2022, filed Nov. 30, 2023), 2023 WL 8271924. We may cite **(Footnote continued on next page…)**

5

whether this Court may exercise its jurisdiction to review the internal operations of a correctional institution, we consider the nature of the alleged deprivation:

> [A] petitioner must identify a constitutionally-protected liberty or property interest. The interest must not be limited by Department regulations yet be affected by a final Department decision. States may also create a liberty or property interest protected by due process by adopting certain regulations that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 516-17 (cleaned up; citations omitted).[7]

Absent a protected interest, this Court lacks jurisdiction to consider a claim. *See, e.g.*, *Williams v. Wetzel*, 232 A.3d 652, 654 (Pa. 2020) (reversing this Court's exercise of jurisdiction because there is "no constitutionally protected interest in maintaining prison employment"); *Bronson*, 721 A.2d at 359-60 (instructing that this Court lacked original jurisdiction over a prisoner's claim because there is no protected property interest in a prisoner's possession of civilian clothing confiscated by the Department); *Gentilquore*, 326 A.3d at 517-18 (dismissing for lack of jurisdiction a claim challenging Department adherence to regulations developed to administer medical services to state inmates); *Feliciano*, 250 A.3d at 1280 (dismissing a claim because 30 days in disciplinary custody did not constitute an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life"); *Coats v. Dep't of Corr.* (Pa. Cmwlth., No. 329 M.D. 2022,

---

memorandum opinions of this Court for their persuasive value. Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[7] This is a separate inquiry from whether any process afforded the prisoner was deficient. *See Swarthout v. Cooke*, 562 U.S. 216 (2011) (reaffirming a two-step inquiry to prisoner due process claims: (1) whether there is a protected liberty or property interest, and (2) whether the procedures followed were constitutionally sufficient).

6

filed October 2, 2023), 2023 WL 6380137 (dismissing a claim for lack of jurisdiction because there is no protected liberty interest in parole).[8]

Petitioner has offered no support for his bald assertion that the "deprivation of parole eligibility . . . [is] a liberty interest under both the United

---

[8] Although its reasoning remains unclear, the Pennsylvania Supreme Court has framed the limitations of this Court's judicial review of internal prison operations in jurisdictional terms. *Williams*, 232 A.3d at 654; *Bronson*, 721 A.2d at 359-60; s*ee* 42 Pa.C.S. §§ 761-764. Additionally, "the limitations placed upon the judiciary to rule on issues of internal prison operations as set forth in *Bronson* apply to our common pleas courts as well." *Walker v. SCI-Greene Psych. Dep't*, 351 A.3d 312, 317 (Pa. Cmwlth. 2025) (quoting *Brown v. Dep't of Corr.*, 913 A.2d 301, 305 (Pa. Cmwlth. 2006); *see also Robinson v. MacIntyre* (Pa. Cmwlth., No. 487 C.D. 2011, filed Oct. 3, 2011), 2011 WL 10843476 ("[U]nder the PLRA, a trial court's jurisdiction does not extend to matters related to inmate grievance or disciplinary hearings and appeals.").

Pennsylvania is not the sole jurisdiction to view these limitations in jurisdictional terms. *See, e.g.*, *Anthony A. v. Comm'r of Corr.*, 166 A.3d 614, 618 (Conn. 2017) ("Our first inquiry, therefore, is whether the petitioner has alleged a protected liberty interest. That question implicates the subject matter jurisdiction of the habeas court."); *see also, e.g.*, *Davis v. English* (D. Minn., No. 12-1483, filed Feb. 27, 2013), 2013 WL 1149526 (reasoning that, because a prisoner had no liberty interest in admission to a residential drug abuse program, the court lacked jurisdiction to consider her habeas petition). Nevertheless, it appears more common for state and federal courts to treat the absence of a protected interest as a merits-based failure to state a claim. *See, e.g.*, *Allen v. S. Carolina Dep't of Corr.*, 886 S.E.2d 671, 673 (S.C. 2023) (rejecting its prior jurisdictional approach, clarifying instead that the administrative law court could "summarily dismiss" an inmate's grievance if it did not implicate a protected interest "sufficient to trigger procedural due process guarantees"); *Trevino v. Baldwin*, 161 N.E.3d 1156 (Ill. App. Ct. 2020) (affirming the merits-based decision of lower court); *Schuyler v. Roberts*, 139 P.3d 781 (Kan. Ct. App. 2006) (reversing the merits-based decision of a lower court); *Schevers v. State*, 930 P.2d 603, 605 (Idaho 1996) (affirming the merits-based decision of lower court); *Moore Grammer*, 442 N.W.2d 861 (Neb. 1989) (affirming the lower court's decision to sustain a demurrer); *see also, e.g.*, *Smith v. McKinney*, 954 F.3d 1075 (8th Cir. 2020); *Davis v. Eberling*, 742 F. App'x 592 (3d. Cir. 2018).

For critical analysis of Pennsylvania's jurisdictional approach, interested parties may consider the concurrence in *Gentilquore*, 326 A.3d at 518-27 (Cohn Jubelirer, P.J., concurring). Conceptually, there are valid concerns with this approach. These concerns have little practical impact on prisoner litigants. Whether this Court views the interest inquiry as a jurisdictional test or merely the first step in a merits-based analysis, *see Swarthout*, *supra* at n.7, a prisoner litigant's inability to identify a cognizable property or liberty interest will be fatal to any due process claim. *Compare Williams*, 232 A.3d at 654, *with Allen*, 886 S.E.2d at 673.

States and Pennsylvania Constitutions," Pet'r's Br. at 11, and we have found none.[9] To the contrary, the United States Supreme Court has long recognized that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). A state may establish a parole system, but it is under no obligation to do so.[10] *Id.*

In Pennsylvania, parole is not a right, but a matter of grace and mercy. *Brittingham*, 275 A.3d at 85; *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Cmwlth. 1998). Upon the expiration of his minimum term, a prisoner may apply for parole, but there is no right to release. *Bowman v. Pa. Bd. of Prob. & Parole*, 709 A.2d 945, 948 (Pa. Cmwlth. 1998). In its discretion, the Pennsylvania Parole Board may grant parole to a prisoner who has demonstrated "his future ability to function as a law-abiding member of society upon release before the expiration of the prisoner's maximum sentence." *Rogers v. Pa. Bd. of Prob. & Parole*, 724 A.2d 319, 322-23 (Pa. 1999). The "decision to grant or deny parole does not affect an *existing* enjoyment of liberty." *Id.* at 323 (emphasis added).[11] Thus, "a prisoner has no protected liberty

---

[9] We caution Petitioner that undeveloped arguments are subject to waiver. *See Pa. Dep't of Health v. Mahon*, 283 A.3d 929, 935 n.11 (Pa. Cmwlth. 2022).

[10] Whether a state recognizes, provides, or protects a liberty interest in parole has been the subject of High Court decisions. *See, e.g.*, *Swarthout v. Cooke*, 562 U.S. 216 (2011) (concluding that a California law created a liberty interest in parole); *Greenholtz*, 442 U.S. at 11-12 (recognizing a liberty interest in Nebraska statute that created the "expectancy of release"); *cf. Wolff v. McDonnell*, 418 U.S. 539 (1974) (concluding that a Nebraska law governing the loss of "good-time" credits (not parole *per se*) was subject to minimal due process requirements). The parties have not briefed these cases, and they offer no appropriate analog to the parole system in Pennsylvania.

[11] *Rogers* recognized that parolees maintain a right to seek review of an adverse parole revocation decision but clarified: "parole release and parole revocation are quite different in that parole revocation involves a paroled prisoner who presently enjoys a certain limited liberty to pursue employment and familial relationships outside the confines of prison, while parole release **(Footnote continued on next page…)**

8

interest in being released from confinement prior to expiration of his or her maximum term." *Robins v. Harry*, 344 A.3d 889, 914 (Pa. Cmwlth. 2025) (quoting *Weaver v. Pa. Bd. of Prob. & Parole*, 688 A.2d 766, 770 (Pa. Cmwlth 1997)).

Finally, we direct the parties to this Court's decision in *Coats*. Therein, a state inmate refused to provide a urine sample. *Coats*, slip op. at 2, 2023 WL 6380137, at *1. Following misconduct proceedings, the inmate learned that the parole board had denied his automatic reparole. *Id.* He filed a grievance, but dissatisfied with the outcome of those proceedings, the inmate petitioned this Court in our original jurisdiction. *Id.* at 2-3; 2023 WL 6380137, at *1-2. In the inmate's view, his prison proceedings had been deficient, and the sanction imposed had "improperly enhanced or extended" his sentence. *Id.* at 6, 2023 WL 6380137, at *3. Upon review, we recognized well-settled precedent in Pennsylvania that "there is no right to parole or reparole." *Id.* at 7, 2023 WL 6380137, at *4 (citing *Bowman* and *Bostic v. Pa. Bd. of Prob. & Parole*, 682 A.2d 401 (Pa. Cmwlth. 1996)). Further, citing *Feliciano* and *Sandin*, we declined to view the denial of parole as an improper enhancement of a sentence. *Id.* (concluding that a prison misconduct's impact on parole eligibility was "too attenuated"). Accordingly, we dismissed the petition for lack of jurisdiction. *Id.*

We accept Petitioner's claim that the misconduct penalties imposed by the Department will delay his parole eligibility. *See* Pet. for Rev., ¶¶ 20, 21. However, if a Pennsylvania inmate has no liberty interest in the denial of parole that is protected by due process, then it follows that Petitioner has no cognizable liberty interest in the delay of his parole eligibility. *See Coats*; *cf. Rogers*; *Brittingham*;

_____

involves a prisoner who has no present liberty interest as a result of his confinement within a prison." *Rogers*, 724 A.2d at 322 (citing *Greenholtz*).

9

*Robins*; *Bowman*.  Absent a cognizable liberty interest, this Court lacks jurisdiction to consider Petitioner's claim.  *Williams*; *Bronson*.

Briefly, we turn to the alternative theory supporting Petitioner's claim, in which he pleads that the Department failed to adhere to its regulations and deprived him of an opportunity to present relevant evidence.  *See* Pet. for Rev., ¶ 40 (citing 37 Pa. Code § 93.10).  Previously, notwithstanding the absence of an interest protected by due process, this Court has recognized a cause of action for the alleged violation of procedural requirements set forth in Department regulations, such as 37 Pa. Code § 93.10.  *See Remorenko v. Pa. Dep't of Corr.* (Pa. Cmwlth., 520 M.D. 2023, filed Aug. 7, 2025), 2025 WL 2252635 (citing in support *Bush v. Veach*, 1 A.3d 981 (Pa. Cmwlth. 2010)).  However, in *Williams*, our Supreme Court disapproved *Bush*:

> We observe that the majority decision in the present case followed the lead of the *Bush* decision in recognizing a right to the process set forth in prison regulations.  The *Bush* court, however, also failed to consider the lack of jurisdiction, in the Commonwealth Court, over due-process claims grounded upon prisoner grievances that are not predicated on a constitutionally-protected liberty or property interest.  *See Bronson*, 554 Pa. at 322-23, 721 A.2d at 359-60.

*Williams*, 232 A.3d at 654 n.2 (some internal citations removed); *see also Flynn v. Pa. Dep't of Corr.* (Pa. Cmwlth., 512 M.D. 2019, filed Sept. 3, 2020), 2020 WL 5240603 (citing *Bush* and *Williams*, and rejecting claim invoking 37 Pa. Code § 93.10 where there was no liberty of property interest in petitioner's kitchen work assignment).  Therefore, we conclude that this aspect of the *Remorenko* decision is contrary to *Williams*, and we decline to follow it.

Petitioner's statutory claim suffers from the same jurisdictional defect. Because he has not pleaded a cognizable liberty interest in his parole eligibility, this Court may not consider his claim. *See Williams*, 232 A.3d at 654 n.2; *Flynn*.

### III. CONCLUSION

Petitioner has pleaded that deficient prison proceedings have deprived him of a liberty interest protected by due process and Department regulations. He is incorrect. In Pennsylvania, a prisoner has no right to parole. *Brittingham*; *Robins*. Therefore, a delay in parole eligibility that results from prison misconduct proceedings is not a cognizable deprivation of a liberty interest. *Coats*; *cf. Brittingham*. Accordingly, we dismiss the petition for review for lack of jurisdiction. *Williams*; *Bronson*; *Gentilquore*. Because we lack jurisdiction, we dismiss the preliminary objections as moot.

**LORI A. DUMAS, Judge**

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Davis, Jr.,                                 :
              Petitioner             :
                            :   No. 325 M.D. 2025
              v.                              :
                            :
Pennsylvania Department of             :
Corrections,                                       :
              Respondent           :

# **O R D E R**

AND NOW, this 4th day of August, 2026, the petition for review filed by Robert Davis, Jr. on August 22, 2025, is DISMISSED for lack of jurisdiction. The preliminary objections filed by the Pennsylvania Department of Corrections on October 7, 2025, are therefore DISMISSED as moot.

_____
**LORI A. DUMAS, Judge**